GARY M. RESTAINO
United States Attorney
District of Arizona
MELISSA KROEGER
Assistant U.S. Attorney
Arizona State Bar No. 025209
Evo A. DeConcini United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
Email: Melissa.Kroeger@usdoj.gov
*Attorneys for Defendant Ofelia Tatad*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Schwartz, | CV-14-2013-TUC-JAS |
| Plaintiff, | |
| vs. | **DEFENDANT'S MOTION FOR RECONSIDERATION** |
| Daniel Miller, et al., | |
| Defendants. | |

Defendant Ofelia Tatad respectfully moves the Court for reconsideration of its Order [Doc. 271] dated March 29, 2023 denying Defendant's Motion for Judgment on the Pleadings as to Plaintiff's Eighth Amendment claims brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971) ("*Bivens*").  In the Order, the Court held that there is no meaningful difference between plaintiff's Eighth Amendment claims and the claims in *Carlson v. Green*, 446 U.S. 14 (1980), because they are both based on the same constitutional right, involve similar defendants in federally operated prisons, and both "derive[d] from prison medical providers' inadequate treatment of prisoners."  [Doc. 271], at 9.  But the Court omitted analysis of the "potential special factors" not considered in *Carlson* – such as the existence of alternative remedial schemes capable of protecting the interests at stake, or other reasons to think Congress is better positioned to create remedies in the context at issue – which rendered this case in a new context.  As such, the decision is at odds with the Supreme

1   Court's decision in *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (directing "that a new

2   context arises when there are 'potential special factors that previous *Bivens* cases did not

3   consider.'") (quoting *Ziglar v. Abbasi*, 582 U. S. 120, 140 (2017)).  For these reasons, this

4   Court should grant Defendant's motion for reconsideration and dismiss the claims against

5   her with prejudice pursuant to Fed. R. Civ. P. 59(e), and 60(b)(6), and alternatively, LRCiv.

6   7.2(g).  Defendant's Motion is supported by the following Memorandum of Points and

7   Authorities and the Court's entire record in this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

8

9   **I.**      **INTRODUCTION**

10          On June 8, 2022, the Supreme Court issued its watershed decision in *Egbert*.

11   Notably, the Court made clear that "a plaintiff cannot justify a *Bivens* extension based on

12   parallel circumstances with *Bivens*" itself unless the plaintiff "also satisfies the analytic

13   framework prescribed by the last four decades of intervening case law." 142 S. Ct. at 1809

14   (quotations omitted).  To determine whether a *Bivens* remedy is available, a court must

15   first ask whether the case presents a new context that is meaningfully different than the

16   three cases in which the Supreme Court has previously implied a damages action.  *Id.* at

17   1803.  If a claim presents a new context, "a *Bivens* remedy is unavailable if there are

18   'special factors' indicating that the Judiciary is at least arguably less equipped than

19   Congress to 'weigh the costs and benefits of allowing a damages action to proceed." *Id.*

20   (quoting *Abbasi*, 582 U.S. at 136)).  Although the Supreme Court prescribed this two-step

21   analysis, it has since clarified that "those steps often resolve to a single question:  whether

22   there is any reason to think that Congress might be better equipped to create a damages

23   remedy." *Id.*  After *Egbert,* courts cannot assume a *Bivens* claim can proceed without a

24   special factors analysis, regardless of how similar it is to prior *Bivens* cases. *See id.*

25   (Gorsuch, J., concurring).  Rather, the Supreme Court has directed "that a new context

26

27

28

arises when there are 'potential special factors that previous *Bivens* cases did not consider.'" *Id.* at 1803 (quoting *Abbasi*, 582 U. S. at 140 (2017).

Defendant respectfully submits that this Court's March 29, 2023 Order [Doc. 271] denying her Motion for Judgment on the Pleadings misapplied this precedent by (1) omitting consideration of whether "potential special factors" not considered in *Carlson* – such as the existence of alternative remedial schemes capable of protecting the interests at stake, or other reasons to think Congress is better positioned to create remedies in the context at issue – rendered this case in a new context; and (2) failing to reach the issue of whether special factors counsel against *Bivens* relief.

## II.   <u>LEGAL STANDARD FOR RECONSIDERATION</u>

Fed. R. Civ. P. 59(e) allows for a "motion to alter or amend [the] judgment."[1]  Under Rule 59(e), reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.  *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  Fed. R. Civ. P. 60(b)(6) further provides for relief from any order "for any other reason that justifies relief."  And LRCiv. 7.2(g) similarly provides the Court with discretion to reconsider an order to avoid error or a manifestly unjust result.  *Moye v. Midland Funding LLC,* No. CV-15-00931-PHX-JJT, 2015 WL 10458833, *1 (D. Ariz. Dec. 21, 2015); *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)); *see also School Dist. No. 1J, Multnomah County v. AC and S, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993).

Against this backdrop, to avoid what Defendant believes will be error and a manifestly unjust result, Defendant respectfully requests that the Court reconsider its Order [Doc. 271] denying judgment on the pleadings.

---

[1] Defendant filed this motion under Rule 59(e) because the question of whether to imply a *Bivens* remedy is an antecedent question to the defense of qualified immunity and gives rise to appellate jurisdiction.  *See Pettibone v. Russell*, 59 F.4th 449, 454 (9th Cir. 2023); Fed. R. Civ. P. 54 (defining "judgment" as any order from which an appeal lies).

1
2

**III.** **THIS COURT ERRED IN DETERMINING THAT PLAINTIFF'S CLAIM OF DELIBERATE INDIFFERENCE WAS NOT MEANINGFULLY DIFFERENT FROM *CARLSON***

3

At the outset, this Court appears to have misapplied binding precedent by

4

concluding that Plaintiff's allegations did not present a "new context." As a matter of law,

5

"a new context arises when there are 'potential special factors that previous *Bivens* cases

6

did not consider.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 582 U. S. at 140 (2017)).

7

Indeed, this is an example of how the two steps "often resolve to a single question: whether

8

there is any reason to think that Congress might be better equipped to create a damages

9

remedy." *Id.* Under this analysis, this case presents a new context because there are several

10

special factors that the *Carlson* court did not consider.

11

**A.** **The Supreme Court did not consider the PLRA in *Carlson***

12

The enactment of the PLRA[2] after the Supreme Court's decision in *Carlson* means

13

that this case presents a new context for the Court to consider. The PLRA was enacted in

14

1996 "in the wake of a sharp rise in prisoner litigation in the federal courts." *Woodford v.*

15

*Ngo*, 548 U.S. 81, 84 (2006). "The PLRA contains a variety of provisions designed to

16

bring prisoner litigation under control." *Id.* (citations omitted).

17
18
19
20
21
22
23
24

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to *Bivens* suits. *See Porter v. Nussle*, 534 U.S. 516, 524 [] (2002). But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of mistreatment.

25

*Abbasi*, 137 S. Ct. at 1865.

26

"Legislative action suggesting that Congress does not want a damages remedy is

27
28

---

[2] 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e et seq.

itself a factor counseling hesitation." *Abbasi*, 582 U.S. at 148.  At the very least, the intervening enactment of the PLRA makes this case "meaningfully different" than *Carlson*, and warrants an investigation of whether there is a single rational reason why *Bivens* should not be extended here.

### B.     BOP Administrative Remedy Program ("ARP")

The current BOP ARP also presents a new context for this case from *Carlson*.  In *Egbert*, the Court held that a court cannot fashion a *Bivens* remedy "if Congress already has provided, or has authorized the Executive to provide 'an alternative remedial structure.'" *Egbert*, 142 S. Ct. at 1804 (citing *Abbasi*, 137 S. Ct. at 1858).  The "relevant question" is not whether a Bivens action would disrupt a remedial scheme or whether the court "should provide for a wrong that would otherwise go unredressed." *Id.* (citations omitted). Nor does it matter that "existing remedies do not provide complete relief." *Id.* "Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.* (citation omitted); *see also Mejia*, 53 F.4th at 505 ("The question is no longer whether the Judiciary is well suited, but whether Congress is better suited.").

BOP regulations provide just such a comprehensive administrative remedy procedure to address the kind of inmate grievances alleged here.  *See* 28 C.F.R. § 542.13-542.15. Congress has implicitly approved these remedies by delegating to the Executive power to create them and by requiring inmates to exhaust them before filing suit.  *See* 42 U.S.C. § 1997e(a).  Therefore, Congressional endorsement of the ARP satisfies the test of establishing a new context.

Even absent such congressional endorsement, the Supreme Court implicitly endorsed the adequacy of the ARP by reasoning that the U.S. Border Patrol's grievance procedure was an adequate remedy because of its "parallels" to BOP administrative remedy procedure. *Egbert*, 142 S. Ct. at 1806 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).  Deterrence—not redressability—is the impetus for *Bivens* relief.  *See id.* Therefore, to "superimpose a *Bivens* remedy" would be to "second-guess th[e] calibration"

of the administrative remedy procedure, an integral process for prison administration authorized by Congress, established by the Executive, and recognized by the Supreme Court.  *Id.* at 1807; *see also Choice v. Michalak*, 2022 WL 4079577 (N.D. Ill. Sept. 6, 2022) (recognizing that a *Bivens* remedy for prison-based inadequate care claim presents a risk of interference with prison administration) (citing *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020)).

Post-*Egbert*, numerous courts, including the Ninth Circuit in *Hoffman*, 2022 WL 6685254, at *1, have found that the ARP is a special factor that counsels hesitation and creates a new *Bivens* context.  *See, e.g., Camillo-Amisano v. Fed. Bureau of Prisons*, No. 20-55038, 2023 WL 2658742, at *1 (9th Cir. Mar. 28, 2023) (holding that BOP's Administrative Remedy Program is a special factor counseling hesitation even if BOP officials interfere with a prisoner's use of the program); *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022); *Dinkus v. United States*, 2022 WL 15525746, at *1 (C.D. Cal. Oct. 27, 2022); cf *Mejia*, 53 F.4th at 506 (noting that BLM administrative remedy process was special factor).[3]

### C.    FTCA and other factors

Under the Court's current analytic framework for considering *Bivens* causes of action, *Egbert*, 142 S. Ct. at 1809, the FTCA can also constitute an alternative remedy that precludes extending *Bivens* liability.  *See, e.g., Mejia*, 53 F.4th at 506-07.  Furthermore, additional factors that counsel hesitation that were not considered in *Carlson* include the impact on government operations and deference in prison management, thus further compelling a finding that this case arises in a new context.

---

[3] The 1996 revision to the BOP's ARP is an additional special factor that *Carlson* could not have considered.  *See* Administrative Remedy Program, 61 FR 86-01, 1996 WL 563 (Jan. 2, 1996) (revising regulations on ARP to include increases in the time limits set for inmate filing of requests and for Bureau responses, additional specifications for the provision of assistance to inmates; and increased access to Administrative Remedy indexes).

**D.      Plaintiff's allegations also present a new factual context as compared to the factual allegations in *Carlson***

The Court also erred by characterizing the factual differences between Plaintiff's claim and *Carlson* as involving only "merit."   Order [Doc. 271], at 9.   In *Carlson,* the plaintiff was the estate of an inmate who died after prison officials "kept him in [an inadequate] facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital." 446 U.S. 16, n.1.  In other words, *Carlson* focused on an incidence of gross and fatal medical incompetence.

In contrast to the life-threatening and fatal asthma attack in *Carlson,* the *Bivens* claim here turns on allegations of taking Plaintiff off the sick call list and failing to administer medicine for a non-acute condition, and a disagreement over the propriety of telling him to drink more water and exercise.   None of these allegations involves a life-threatening emergency resulting in death as in *Carlson.*  446 U.S. 16, n. 1.  Also unlike *Carlson,* none of these allegations involves a direct connection to the alleged harm – "polycystic kidney disease" resulting in pain and alleged potential for unknown kidney and cardiac issues that may manifest later in life."   Indeed, the Complaint alleges no facts tying Defendant's alleged acts to the alleged harm.

Importantly, the significance of *Carlson* involving a life threatening emergency resulting in death is not that the *Carlson* claim was more meritorious than Plaintiff's claim, as suggested by the Court's Order [Doc. 271], at 9.  Rather, the distinction "is significant for multiple reasons, including that administrative and injunctive relief would have a completely different application to [Plaintiff's] claims than to the claims in *Carlson*, where the failure to properly address a medical emergency proved fatal." *Washington v. Fed. Bureau of Prisons*, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022).   As such, Plaintiff's non-emergent and non-life threatening condition presents a lesser need for the court to impose a remedy, because existing non-*Bivens* remedies are available.  This distinction is

rooted in the separation of powers concerns underscored in *Egbert* and *Abbasi*, rather than the comparative merits of the claims.  Moreover, a recent decision from this district recognized that deliberate indifference claims present a new context when, as here, they do not arise from a life-threatening medical emergency.  *See Eads v. United States*, Case No. 4:20-CV-00019-JGZ (D. Ariz. April 19, 2023), at Doc. 243.

## IV.    UNDER THE REQUIRED SPECIAL FACTORS ANALYSIS, THE COURT SHOULD HAVE CONCLUDED THAT CONGRESS IS BETTER SUITED TO FASHION A REMEDY

As explained above, *Egbert's* two-step approach requires courts to analyze whether special factors (or "rational reasons" not to extend) are present regardless of whether the case would otherwise be considered a new context.  *See Egbert*, 142 S. Ct. at 1803.  This is so because the presence of special factors not previously considered itself renders the case a new context. *See Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 137 S. Ct. at 1860) ("[A] new context arises when there are "potential special factors that previous Bivens cases did not consider.").  "Because recognizing a *Bivens* cause of action is an extraordinary act that places great stress on the separation of powers," courts "have concomitant responsibility to evaluate any grounds that counsel against *Bivens* relief." *Egbert*, 142 S. Ct. at 1806 n.3 (internal quotation marks omitted).  Yet, in allowing Plaintiff's *Bivens* claim to go forward, this Court failed to consider that question.  Accordingly, reconsideration is appropriate so this Court may conduct the special factors analysis before engaging in the "extraordinary" step of extending *Bivens* to a new context.

For those reasons set forth above, as well as the reasons set forth in Defendant's Motion for Judgment on the Pleadings [Doc. 261] and Reply [Doc. 267], incorporated herein by reference, the Court should conclude that special factors weigh against extending *Bivens* to Plaintiff's proposed new context, and Plaintiff's *Bivens* claim against Defendant should be dismissed with prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendant requests that the Court grant Defendant's Motion for Reconsideration and dismiss this case.

Respectfully submitted this 26th day of April, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Melissa Kroeger*
MELISSA KROEGER
Assistant U.S. Attorney
*Attorneys for Defendant Ofelia Tatad*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and a copy was mailed via first class U.S. Mail on April 27, 2023 to:

Paul Schwartz
10331 S. Priest Road
French Camp, CA  95231
*Plaintiff Pro Se*

*s/M. Kroeger*

- 9 -